UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDUL REHMAN,<br><br>                              Petitioner,<br><br>v.<br><br>SIXTO MORENO, Facility Administrator, Imperial Regional Detention Center, MTC; et al.,<br><br>                              Respondents. | Case No.:  20-cv-1741-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

   The matters before the Court are the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Abdul Rehman (ECF No. 1) and the Motion to File Documents Under Seal filed by Respondents (ECF No. 4).

**I.   PROCEDURAL BACKGROUND**

   On September 4, 2020, Petitioner Abdul Rehman filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). Petitioner alleges that he is a citizen of Pakistan and is an immigration detainee at the Imperial Regional Detention Facility ("IRDF"). Petitioner alleges that his detention has been unlawfully prolonged and places him at a severe risk of exposure to COVID-19 in violation of his substantive and procedural due process rights under the Fifth Amendment of the United States Constitution; the

Administrative Procedure Act, 5 U.S.C. §§ 702(2)(A) and 706(1); and international law. Petitioner requests that the Court order Petitioner's immediate release from custody.

On September 8, 2020, the Court ordered Respondents to show cause why the Petition should not be granted by filing a written return. (ECF No. 2). On September 22, 2020, Respondents filed a Return to the Petition (ECF No. 3) and a Motion to File Documents Under Seal (ECF No. 4). On October 12, 2020, Petitioner filed a Traverse. (ECF No. 8).

## II. FACTS

### a. Petitioner's Immigration History

Petitioner is twenty years old and is a citizen of Pakistan. (Record of Deportable/Inadmissible Alien, ECF No. 3-2 at 1). On July 22, 2019, Petitioner was apprehended approximately 300 yards north of the United States/Mexico border, near the Calexico Port of Entry. (*Id.* at 2). The Department of Homeland Security ("DHS") determined that Petitioner was inadmissible and ordered Petitioner removed from the United States. (Notice and Order of Expedited Removal, ECF No. 3-2 at 6). Petitioner requested asylum.

On August 14, 2019, Petitioner was taken into U.S. Immigration and Customs Enforcement ("ICE") custody at IRDF pending removal to Pakistan. On September 18, 2019, an asylum officer conducted a credible fear interview. On October 24, 2019, the asylum officer determined that Petitioner did not have a credible fear of persecution or torture. Petitioner requested review by an immigration judge. (*See* Decision to Continue Detention, ECF No. 3-2 at 20). On October 31, 2019, the immigration judge determined that there was a possibility that Petitioner could establish eligibility for asylum and that Petitioner established a fear of persecution or torture. The immigration judge vacated DHS's expedited removal order and commenced regular removal proceedings. (Order of the Immigration Judge, ECF No. 3-2 at 7). Petitioner's master calendar hearing was continued seven times—six times at the request of Petitioner and one time at the request of the government. Petitioner has an upcoming individual hearing on December 9, 2020.

After continuances requested by Petitioner and the government, Petitioner was given a bond hearing on March 9, 2020. (Bond Decision, ECF No. 3-2 at 12). On March 12, 2020, the immigration judge denied Petitioner's request for bond, finding that Petitioner failed to meet his burden to "assuage[e] the general concerns raised by evidence which shows he was smuggled by a group which willingly transports individuals involved with terrorism" and establish that he is not a threat to national security. (*Id.* at 15). The immigration judge further determined that Petitioner is "an extreme flight risk such that no amount of bond would mitigate." (*Id.* at 15-16).

On July 29, 2020, ICE reviewed Petitioner's custody and determined that Petitioner failed to "demonstrate[ ] or provide[ ] enough information that will mitigate [his] flight risk," and Petitioner would remain in custody pending removal. (Decision to Continue Detention, ECF No. 3-2 at 20). On July 30, 2020, Petitioner filed a motion for a custody redetermination hearing. (ECF No. 8-3 at 28-32). On August 3, 2020, the immigration judge denied the motion, finding that there was no change in circumstances since the March 9 bond hearing that would warrant a redetermination hearing. (Order of the Immigration Judge, ECF No. 3-2 at 21). Petitioner did not appeal. On September 15, 2020, ICE again reviewed Petitioner's custody and determined that Petitioner failed to "demonstrate[ ] or provide[ ] enough information that will mitigate [his] flight risk," and Petitioner would remain in custody pending removal. (Decision to Continue Detention, ECF No. 3-2 at 25).

### b. Petitioner's Medical History and Conditions at IRDF

Respondents submitted over 600 pages of Petitioner's IRDF medical records. Petitioner has been seen nearly a hundred times by medical staff at IRDF, mostly for complaints of gastrointestinal pain, chest pain, and shortness of breath. At the intake screening on August 14, 2019, Petitioner did not indicate any history of asthma or breathing problems. (ECF No. 5-4 at 148). For the first time on April 16, 2020, Petitioner presented with shortness of breath and told the registered nurse that he was using a fellow detainee's inhaler. The registered nurse noted that Petitioner has a history of asthma. (ECF No. 5-3 at 26). After April 16, 2020, Petitioner repeatedly presented with chest pain and shortness of

breath. (*See, e.g.*, ECF No. 5-2 at 48, 138, 140, 147). On July 16, 2020, a medical doctor diagnosed Petitioner with "mild, intermittent asthma, uncomplicated." (*Id.* at 19). The medical doctor noted that Petitioner's asthma is "not considered to be a risk of covid-19." (*Id.* at 20). Petitioner has been provided medication for his gastrointestinal concerns and asthma, has been prescribed a special diet, and has been given advice about foods to avoid.

Since the beginning of the COVID-19 pandemic, IRDF has implemented policies and procedures to protect detainees from COVID-19 exposure and infection. (Marreno Decl., ECF No. 3-5 ¶¶ 10-12). Measures include staff education and training, detainee education, screening of staff and other visitors to IRDF, increased and enhanced cleaning and sanitation, provision of hygiene supplies, social distancing when possible, staff and detainee use of personal protective equipment, COVID-19 screening of all incoming detainees and quarantining when possible, suspension of social visits, no-contact legal visits, and isolation and quarantine of detainees with suspected or known cases of COVID-19. (*Id.* ¶¶ 13-96).

IRDF has significantly reduced its detainee population. IRDF has the capacity to house 782 detainees. As of September 16, 2020, there were only 272 detainees at IRDF, approximately 34.78% of total capacity. (*Id.* ¶ 97). Of the thirteen units currently used for housing at IRDF, capacity rates range from 14.06% to 57.81%, making social distancing possible. (*Id.* ¶ 101). As of September 16, 2020, 195 detainees had been tested for COVID-19. Only seven detainees have tested positive. Two tests were pending as of September 16, 2020. No IRDF detainees have died from COVID-19, and the last positive COVID-19 test for an ICE detainee assigned to population housing was on May 29, 2020. (*Id.* ¶ 98).

### III. DISCUSSION

#### a. Detention During the COVID-19 Pandemic

Petitioner asserts that his detention at IRDF during the COVID-19 pandemic amounts to punishment and violates his substantive due process rights and rights to life and health under international law. Petitioner contends that he has a heightened risk of severe illness from COVID-19 due to asthma. Petitioner contends that Respondents have failed to

provide adequate medical care and have failed to take precautions to prevent the spread of COVID-19.[1]

Respondents contend that Petitioner fails to show that the steps Respondents have taken to prevent and treat COVID-19 at IRDF are objectively unreasonable. Respondents contend that Petitioner's medical records demonstrate that he has received adequate medical treatment and directly refute his allegations that he is at a high risk of severe illness from COVID-19.

To succeed on a habeas petition, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Individuals detained pursuant to immigration violations are civil detainees. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The government violates the Due Process Clause when a civil detainee is "subjected to conditions that 'amount to punishment.'" *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 536). A petitioner can demonstrate punitive conditions by showing that the challenged condition is: (1) expressly intended to punish; (2) not rationally related to a legitimate government objective; or (3) excessive in relation to a legitimate government objective. *See Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015); *see also Jones*, 393 F.3d at 933-34 (holding that conditions are punitive where they are "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods" (citation omitted)).

In addition, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some

---

[1] In the Traverse, Petitioner asserts that "Respondents' disparate treatment of Petitioner based on his disabilities and Respondents' failure to provide Petitioner with reasonable accommodations constitute disability discrimination in violation of Section 504 [of the Rehabilitation Act]." (ECF No. 8 at 29). Petitioner does not raise a disability discrimination claim in the Petition, and the Court does not address this claim raised for the first time in the Traverse.

responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989); *see Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (when the government takes custody of a person, it creates a "special relationship" wherein the government assumes responsibility for that person's safety and well-being (citation omitted)). The government violates the Due Process Clause if it fails to provide civil detainees with "basic human needs," including "food, clothing, shelter, medical care, and reasonable safety." *DeShaney*, 489 U.S. at 200.

The Court of Appeals for the Ninth Circuit analyzes constitutional claims based on a failure to provide for basic human needs under an objective deliberate indifference standard. *See Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). Under the objective deliberate indifference standard, the petitioner must show:

> (1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm;(3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (alteration in original) (quoting *Kingsley*, 135 S. Ct. at 2473).

The Supreme Court has recognized that the detention of individuals pending their removal proceedings is rationally related to the legitimate governmental interest of ensuring their appearance for their deportation proceedings and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690. "[D]etention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see Jennings v. Rodriguez,* 138 S. Ct. 830, 836 (2018) ("Detention during [immigration] proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity

before a final decision can be made."). In this case, the government has a strong interest in Petitioner's continued detention. The immigration judge determined that Petitioner is "an extreme flight risk" and failed to "assuage[e] the general concerns raised by evidence which shows he was smuggled by a group which willingly transports individuals involved with terrorism" and establish that he is not a threat to national security. (Bond Decision, ECF No. 3-2 at 15-16).

In addition, Respondents are aware of the risks posed by COVID-19 and have taken substantial steps to respond to the COVID-19 pandemic. IRDF is operating at less than half capacity. Practices have been implemented to provide detainees with personal protective equipment and enhanced cleaning measures, and to promote the maintenance of six feet of physical distance among detainees and staff at IRDF. Respondents' data show that their responsive measures have been effective at reducing the spread of COVID-19. No IRDF detainees have died from COVID-19, and the last positive COVID-19 test for an ICE detainee assigned to population housing was on May 29, 2020. (Marreno Decl., ECF No. ECF No. 3-5 ¶ 98). Although Petitioner suffers from asthma and gastrointestinal concerns, the record shows that Petitioner has adequate access to medical care and that IRDF has taken adequate steps to respond to the COVID-19 outbreak. Petitioner has not demonstrated that his continued detention under the current conditions at OMDC is excessive in relation to the government's legitimate objective. Petitioner fails to provide evidence that the conditions at OMDC place him at a "substantial risk of suffering serious harm" or that the measures Respondents have taken to address the COVID-19 outbreak are "objectively unreasonable" in violation of Petitioner's substantive due process rights or rights to life and health under international law. *Castro*, 833 F.3d at 1071.

b. **Prolonged Detention**

Petitioner asserts that his detention violates his procedural due process rights because he continues to be detained "for an indefinite amount of time without a hearing to determine whether his prolonged detention is justified . . . ." (ECF No. 1 at 21). Petitioner contends that the decisions of the immigration judge to deny a custody redetermination

hearing and of ICE to deny his requests for parole were "made in an arbitrary and capricious fashion" in violation of his procedural due process rights and the Administrative Procedure Act, 5 U.S.C. §§ 702(2)(A) and 706(1), without considering Petitioner's evidence that he is not a flight risk, Petitioner's evidence that he has strong community ties, and the impact of COVID-19. (*Id.* at 35). Petitioner contends that his prolonged detention violates his substantive due process rights because his asylum case may take years because of the backlog of immigration cases and delays due to COVID-19, and his continued detention does not bear a reasonable relation to a legitimate government purpose.

Respondents contend that Petitioner failed to exhaust administrative remedies because he did not appeal his adverse custody redetermination ruling to the Board of Immigration Appeals ("BIA"). Respondents contend that there is no presumptively unreasonable length of detention because Petitioner's immigration proceedings are pending. Respondents contend that Petitioner has repeatedly requested continuances of his asylum proceedings, is a flight risk and a risk to national security and public safety, and has been afforded full procedural due process.

"[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523. Due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Courts must consider 1) "the private interest that will be affected by the official action;" 2) the government interest, including the burdens additional process would cause; and 3) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 335.

In habeas cases, courts "may require" the exhaustion of administrative remedies when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes

and to preclude the need for judicial review.

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). If a petitioner fails to exhaust prudentially required administrative remedies, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Id.* (quoting *Leonardo v. Crawford,* 646 F.3d 1157, 1160 (9th Cir. 2011)). However, "a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

In this case, Petitioner was given a bond hearing on March 9, 2020. On March 12, 2020, the immigration judge denied Petitioner's request for bond. (Bond Decision, ECF No. 3-2 at 15-16). On July 30, 2020, Petitioner filed a motion for a custody redetermination hearing. (ECF No. 8-3 at 28-32). On August 3, 2020, the immigration judge denied the motion, finding that there has been no change in circumstances since the March 9 bond hearing that would warrant a redetermination hearing. (Order of the Immigration Judge, ECF No. 3-2 at 21). Petitioner did not appeal. *See* 8 C.F.R. § 1003.19(f) (a detainee may appeal the determination of an immigration judge with respect to custody status or bond redetermination to the BIA). Petitioner fails to set forth evidence demonstrating the exhaustion of administrative remedies or justifying a waiver of the exhaustion requirement as to his claims that the immigration judge's denial of a custody redetermination hearing violated Petitioner's due process rights or 5 U.S.C. §§ 702(2)(A) and 706(1). *See Leonardo*, 646 F.3d at 1160 ("Leonardo pursued habeas review of the IJ's adverse bond determination before appealing to the BIA. This short cut was improper. Leonardo should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision."); *see also Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir.

2003) (a petitioner "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal").

In addition, DHS has authority to detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Although § 1226(a) "does not authorize indefinite detention," the holding in *Zadvydas* that post-removal detention of more than six months is presumptively unreasonable does not apply where, as in this case, the petitioner's removal proceedings are pending. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (finding no constitutional violation in detention of over three-years under § 1226(a)). Petitioner's asylum claim is pending. Petitioner has been detained for fourteen months, received a bond hearing six months ago, and received a custody redetermination decision two months ago. The immigration judge determined that Petitioner failed to establish that he is not a threat to national security and is an extreme flight risk. ICE reviewed Petitioner's custody on July 29, 2020, and September 15, 2020, finding that Petitioner failed to "demonstrate[ ] or provide[ ] enough information that will mitigate [his] flight risk," and Petitioner would remain in custody pending removal. (Decisions to Continue Detention, ECF No. 3-2 at 20, 25). Petitioner has requested six continuances of his asylum hearing and has an upcoming individual hearing on December 9, 2020.

This Court has determined that the government has a strong interest in Petitioner's continued detention pending his asylum determination. ICE has provided Petitioner with periodic reviews of his custody documenting the reasons for Petitioner's continued detention, which are supported by the immigration judge's bond decision. Further, Petitioner has not demonstrated that his continued detention is excessive in relation to the government's legitimate objective, that the decisions of ICE to continue Petitioner's detention were arbitrary and capricious, or that ICE unreasonably withheld or delayed review of Petitioner's detention. *See* 5 U.S.C. § 702(2)(A) (allowing a reviewing court to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); 5 U.S.C. § 706(1) (allowing a reviewing court to "compel

agency action unlawfully withheld or unreasonably delayed"). Petitioner has failed to show that his continued detention violates his substantive or procedural due process rights or the Administrative Procedure Act. The Court concludes that Petitioner fails to demonstrate that his continued detention violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## IV. CONCLUSION

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Abdul Rehman (ECF No. 1) is denied.

IT IS FURTHER ORDERED that the Motion to File Documents Under Seal filed by Respondents (ECF No. 4) is granted.

Dated: November 3, 2020

Hon. William Q. Hayes
United States District Court